EDWARD H. RANKIN v. ALBERT A. CRANE ET AL.

*Malicious prosecution—Probable cause—Burden of proof—Instructions to jury—Embezzlement.*

1. In an action for malicious prosecution, the burden of proof is upon the plaintiff to show want of probable cause.

2. A *prima facie* case may be made by showing plaintiff's discharge, but it is not conclusive.

3. Where there is no dispute as to the facts, want of probable cause is a question of law to be determined by the court.

4. Where the evidence as to the facts claimed by the plaintiff to show want of probable cause is conflicting, it is the duty of the court to instruct the jury clearly what facts, when established, will justify a finding of want of probable cause, and a general charge is not sufficient.

5. A trusted employé, coming to the conclusion that his services were to be dispensed with before the expiration of the year for which he was hired, discounted a note received from a customer, and which he should have deposited to his employers' credit, at a bank outside of the State, and appropriated a portion of the money in payment of his unearned salary, whereupon his employers caused his arrest on a charge of embezzlement. And in an action for malicious prosecution thereafter instituted by the employé it is held that the court should have instructed the jury that want of probable cause was not established by the evidence, but, on the contrary, that it did establish probable cause.

6. The existence of probable cause being thus established, the motives of defendants in causing the arrest of plaintiff are immaterial, and the fact that they offered to refrain from such prosecution if plaintiff would repay the money he had misappropriated is not sufficient to establish want of probable cause.

Error to Lenawee. (Lane, J.) Argued January 10, 1895. Decided January 22, 1895.

Case. Defendants bring error. Reversed, and no new trial ordered. The facts are stated in the opinion.

*Watts, Bean & Smith* and *Shepard & Lyon,* for appellants.

*John E. Bird* and *L. H. Salsbury,* for plaintiff.

GRANT, J. The defendants were copartners doing a manufacturing business in Tecumseh. Plaintiff was their trusted clerk and employé, keeping their books, and having the substantial charge of the business. Plaintiff entered their employ March 17, 1888, under a verbal contract, claimed by him to be for a year, but by the defendants to be indefinite as to time. The salary was at the rate of $1,000 per year, payable monthly. Plaintiff took his pay monthly, and charged it to himself upon the books. The banking business was done with the banking house of O. P. Bills & Co., Mr. Bills being one of the defendants. On but one occasion previous to the one now in question had the plaintiff discounted any paper of the firm, or done any banking business, with any one but O. P. Bills & Co. Defendants testified that they instructed plaintiff to do all his business at that bank. Plaintiff testified that he was not so instructed. The partnership of the defendants was formed in January, 1888, to continue for a year. Early in December, 1888, plaintiff came to the conclusion that defendants intended to dispense with his services. The only reason he had for

this conclusion was that he thought he saw indications that they were going to sell out. Some time during the week ending Saturday, December 22, a note, dated December 13, and executed by Eiler, Breitweiser & Co., customers of the defendants, was received in the due course of mail by the plaintiff. On December 22 the plaintiff took this note, went to Toledo, Ohio, discounted it at the First National Bank, and secured two drafts, one payable to his own order for $225.74, and the other payable to the firm, which he afterwards deposited to defendants' credit in the bank of O. P. Bills & Co. Plaintiff took this money as payment for his unrendered services for the remainder of the year. At the same time he took $25 of this money in payment for a few hours' work on two evenings in examining the books of another company, which were a part of the assets of the defendants. He testified that defendants instructed him to do this work, and that nothing was said about payment. He presented a bill to the other company, which refused payment. He testified:

"So [after that company's refusal] then I paid myself before I had any talk with either of the defendants about it. I did not present a bill to the defendants, nor say anything to them about it, because I thought when I saw them it might be under adverse circumstances."

Plaintiff admitted that he knew he had no right to take the money in payment of this unearned salary; that he knew he would be liable to · the defendants in a civil action for its recovery. He refused to pay it back when demanded, and told his employers that he intended to keep it. He testified:

"I took this note to Toledo for the purpose of getting the money ·for myself out of it. That is one of the main purposes. There might have been some minor reasons, but I do not think of any now. If I had discounted it at the bank of O. P. Bills & Co., I would not have been

liable to have gotten the money upon my salary. I would probably not have received it. * * * I never intended to pay that money back in the world. If I had, I should not have appropriated it at that time. I suspected that I was taking this money in a manner that might leave me liable to a suit, yes, in a civil way. * * * I knew that I had not earned it. * * * I knew that defendants were abundantly responsible."

The defendants made a substantial statement of the facts to Mr. Watts, an attorney of experience and good standing, who advised them that the plaintiff was, guilty of embezzlement under the statute, and that they further advise with the prosecuting attorney, which they did. He advised the prosecution, which was instituted. Upon the examination, which was conducted by the prosecuting attorney, the plaintiff was discharged, whereupon he instituted this suit for malicious prosecution, in which he recovered verdict and judgment.

The burden of proof was upon the plaintiff to show want of probable cause. A *prima facie* case may be made by showing a plaintiff's discharge, but it is not conclusive. In this case there is no dispute as to the facts. It is the settled rule in this State that, the facts being conceded, want of probable cause is a question of law to be determined by the court. If there is a conflict of evidence as to the facts claimed by the plaintiff to show this, it is the duty of the court to instruct the jury clearly what facts, when established, will justify a finding of want of probable cause. A general charge is not sufficient. *Hamilton v. Smith*, 39 Mich. 222; *Wilson v. Bowen*, 64 Id. 133; *Huntington v. Gault*, 81 Id. 144; *Ball v. Rawles*, 93 Cal. 222. See, also, *Perry v. Sulier*, 92 Mich. 72; *Harris v. Woodford*, 98 Id. 147.

The court in the present case did not instruct the jury as to what facts relied upon by the plaintiff would constitute want of probable cause. The court, however, should

have instructed the jury that want of probable cause was not established by the evidence, but, on the contrary, that it did establish probable cause. The plaintiff took the money knowing that it was not his, and that he had no right to it. He knew that it was his duty to deposit the note at the bank with which the firm did its banking business. Instead of doing this, he took the note, and went out of the State, to get it discounted, for the express purpose of getting an unjustifiable advantage over his employers. The court instructed the jury that the plaintiff had no right to take the money, and that he committed a wrong against his employers in doing so, but left it to the jury to determine whether in taking it he honestly believed that he had a right to do so. The question is not to be determined by the amount, but by the principle involved. If he possessed the right to take $225 which he had not earned, upon the fear that he was to be discharged, he would have the right to take $10,000 for the same reason. It is difficult to understand why this was not a fraudulent conversion under the statute. The intent is often to be inferred from admitted facts, and where a trusted employé takes the property of his employer, and converts it to his own use, knowing that he has no right to it, it would seem reasonable that the fraudulent intent should be inferred. We need not, however, pass upon this question. It is sufficient to say that probable cause existed. This being established, the motives of the prosecutor are immaterial, and the fact that defendants offered to refrain from criminal prosecution if the plaintiff would repay the money he had misappropriated is not sufficient to establish want of probable cause. However unjustifiable in law it may be to compound a felony by a promise not to prosecute an employé who has misappropriated funds, yet it is common knowledge that in nearly all cases of embezzlement the repayment of the

money will secure exemption from prosecution by the employer. It would be little short of absurdity to hold that such an offer or promise will stamp the transaction as innocent, and permit an employer to be mulcted in damages on the ground that there was no probable cause, simply because the employer promised not to prosecute if the amount were paid.

Judgment reversed, and no new trial ordered. The defendants will recover the costs of both courts.

MONTGOMERY and HOOKER, JJ., concurred with GRANT, J. McGRATH, C. J., concurred in the result. LONG, J., did not sit.