**BRYAN & AMIDEI, Appellants,**

v.

**Thomas H. LAW, Appellee.**

**No. 16972.**

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 6, 1968.

Rehearing Denied Jan. 3, 1969.

Brown, Day & Crowley, and M. Hendricks Brown, Fort Worth, for appellants.

Stone, Tilley, Parker, Snakard, Law & Brown, and W. Terry Gardner, Fort Worth, for appellee.

## OPINION

RENFRO, Justice.

On May 4, 1965, Patricia Dip brought Suit No. 39165–F in the 153rd District Court of Tarrant County against Jow Ming Dip in which she asked for a divorce, division of property and other relief. The petition was signed by Bryan & Amidei, attorneys.

On June 1, 1965, the plaintiff took a nonsuit in said cause. Defendant was represented by Thomas H. Law, attorney.

On September 8, 1965, Jow Ming Dip, represented by Law as attorney, filed Cause No. 41636–C against Patricia Jane Pylate (Patricia Dip) in which he alleged that Patricia had never been his wife.

On September 16, 1965, a judgment was entered in the above case which decreed that Patricia had never been Dip's wife. In said judgment she was permanently enjoined from claiming to be Dip's wife. The judgment was entered after a contract and agreement dated the 9th day of September between Dip and Pylate was executed in which they asserted that all their controversies had been settled by the payment of $14,000.00 by Dip to Pylate (Patricia Dip).

On March 1, 1966, A. J. Bryan and Maurice Amidei, a law partnership, filed suit against Jow Ming Dip in which they alleged they were formerly employed by Patricia Dip to represent her in a divorce and for an accounting of property; that she entered into a written contract with plaintiffs agreeing to pay them 25% of any money and property recovered; that upon a hearing non-suit was taken because Patricia Dip had not resided in Tarrant County for the 6 months' period preceding the filing of said divorce; that before, during, and after the hearing, conferences and correspondence were carried on concerning a settlement of the claim, such conferences being carried on by defendant's attorney and plaintiff's attorneys; that Dip and his attorney knew that Patricia Dip would have to, through necessity, contract on a contingent fee basis and therefore defendant and her attorney were cognizant of circumstances and facts which were sufficient to put them upon notice or at least upon inquiry as to whether plaintiffs actually had a contingent interest in any settlement Patricia might make with Dip; that defendant, through his attorney, effected a settlement with Patricia without

the knowledge of the plaintiffs; that defendant Dip, by reason of his conduct, had become liable to plaintiffs in the sum of $3,500.00.

On August 28, 1967, Plaintiffs' First Amended Original Petition was filed in which Thomas H. Law was made a party defendant. The material allegations as to Law are contained in paragraph 5 which we here reproduce in full:

"It is further shown to the court that the defendant Dip in dealing with the said Patricia Dip in the making of the settlement as above described was represented, counseled with and advised by the defendant Thomas H. Law, an attorney at law of the Fort Worth Bar, under circumstances where the said Thomas H. Law in truth and in fact did all things alleged herein and was responsible for all things alleged herein to have been done by the said defendant Dip. The said defendant Law either knew or certainly was charged with knowledge that the plaintiff law firm had not been paid any fee in this matter and were not being paid any fee and either knew or was charged with knowledge that such plaintiff law firm would have an interest in any settlement that would be made with the said Patricia Dip. In spite of such knowledge on the part of the said Law he failed and refused to show the plaintiff law firm the courtesy of advising them of any proposed settlement or of the making of the settlement and by his conduct he likewise became indebted to the said plaintiff law firm in such amount of $3,500.00 along with his said client Jimmy Dip, and by reason of such conduct on the part of the said Thomas H. Law, the plaintiffs have been damaged in the amount of $3,500.00."

The suit as to Law was severed from the suit against Dip and numbered as a separate case.

Motion for summary judgment was filed by Law.

On April 19, 1968, the court entered summary judgment for Law finding that there was an absence of genuine issue of any material fact.

Plaintiffs appeal on the grounds: (1) that the motions, affidavits, pleadings and depositions failed to show an absence of material fact as to whether Law had sufficient facts to put him on inquiry to ascertain whether Bryan & Amidei was retained by Patricia at the time the agreed judgment was entered, and (2) the court erred in holding that Law, as agent and attorney for Dip, could not be legally obligated to plaintiffs even if he had actual knowledge of plaintiffs' assignment from Mrs. Patricia Dip Pylate.

The "holding" set out in point 2 was a conclusion expressed by the judge in a prejudgment letter to the attorneys. It was not written into the judgment.

By deposition A. J. Bryan testified: By contract dated May 1st and acknowledged May 3, 1965, Patricia Dip did "Grant, sell, assign and convey to * * * (Bryan) an undivided one-fourth (¼) interest in and to any money and property recovered * * *" from Dip in the divorce suit by compromise or settlement.

At that time she did not tell him she had previously employed other attorneys—he learned on September 30, 1965, she had employed other attorneys in a suit or suits against Dip; at a hearing on June 1, 1965, Law offered certified copy of sworn pleadings Patricia Dip had filed in Dallas County two or three years past in which she had sworn Dallas was her residence, and knowing she had not actually resided in Tarrant County in the interim, he took a voluntary non-suit.

Jimmy Dip accompanied Mrs. Dip to witness' office on the occasion of her first visit to him; Dip said he did not have an attorney; after suit was filed Tom Law filed an answer for Dip; immediately after the non-suit was taken Law called witness and Amidei into a conference room and asked if the suit could be settled; witness answered, " 'Well, Tom, I don't know. I

will be willing to try.' If we don't settle it, why, I want you to know now we are going to refile it when she establishes her residence here at the end of six months from the time she moved back. Well, he said, 'How can we settle it?' I said, 'Make an offer.' He said, 'We will pay you $5,000.' And in the meantime Mrs. Dip had gone. And I said, 'I will contact her and let you hear from me.'"

The offer was refused; counter offer was made to Law, which was neither expressly rejected or accepted.

He did not tell Law he had an assignment of Patricia's interest but "never once dreamed that he would not contact me if this thing came up again after what I had told him, * * *."

Witness learned of agreed judgment as result of a notice in newspaper; he immediately (September 28, 1965) wrote Dip and Law demanding $3,500.00 from Dip; he tried to locate Patricia but has been unsuccessful; he knew Patricia was living temporarily in El Paso but made no attempt to locate her there; he never attempted to locate Patricia after receiving Law's letter of September 30, 1965.

Plaintiff Amidei testified (August 31, 1966) by deposition: He was present in court during the hearing which led to the non-suit; nothing was introduced or said about plaintiffs' contract with Patricia, or any claim of a contingent fee; they did not tell Law they had a written contract; witness never contacted previous attorneys of Patricia; after non-suit was taken Mr. Law called plaintiffs into a conference room and "Mr. Bryan told him that we were going to refile the suit in six months, and he said, 'Well, can we settle the case?' And Mr. Bryan said that we hadn't put on all our evidence and we were going to refile the case as soon as she established her residence in six months, and he asked what they would offer in settlement, and Tom Law told him $5,000 in cash. And Mr. Bryan says, 'We will submit it to our client.'"

Following the hearing he saw Law several times in passing but the matter was not mentioned.

Deposition of Jow Ming (Jimmy) Dip was taken by plaintiffs in August, 1966. Dip testified: He knew plaintiffs wrote a letter to Law about June 1, 1965, offering to settle the Dip matter for the sum of $50,000 cash, General Motors stock and child support; he met Patricia at the zoo in August to talk about a settlement; after the June hearing Law had told him "they" would wait 6 months to file another suit; he didn't know, and Patricia didn't tell him plaintiffs were still representing her in August; Patricia said she didn't retain any lawyers at the time of the settlement; she said that in Law's office they had talked about a settlement before they went to Law's office; they had agreed on $14,-000.00; "We (witness and Law)—* * * well, we asked her if Mr. Bryan still represented her, and she said no." Mr. Law asked her that question; witness had asked her before they went to Law's office if she was still represented by Mr. Bryan and she said no; she did not tell him she had signed a contract with Bryan; Mr. Law asked her if she wanted an attorney to represent her and she said no; they went to the courthouse a week or two after the conference in Law's office; they went to Law's office twice before the amount was agreed upon.

Questioned about what advice Bryan would have given her if consulted witness answered, "What she did was her business. I don't know what she does, but I didn't tell her anything, no, sir, whether to see a lawyer or not. * * * She was privileged to see a lawyer if she wanted to, but I didn't tell her anything."

In his answer Law alleged that on August 31, 1966, plaintiffs' attorney took the deposition of the only defendant in the case at that time, Jimmy Dip; Law's deposition was not taken because he was out of town on the above date and thereafter plaintiffs did not request Law to give a deposition,

nor propound any written interrogatories to him; when Law was made a defendant 17 months after the suit was originally filed against Dip nothing relating to the suit had changed; the financial responsibility of Dip had not changed; he was still solvent and operating a successful restaurant business in Forth Worth.

In an affidavit made a part of the motion for summary judgment Law swore he filed the suit (followed by the agreed judgment) on behalf of Dip on September 9, 1965; on September 30, in reply to a letter from Bryan to Dip demanding $3,500.00, Law wrote Bryan the following letter:

"Dear Andy:

"Jimmie Dip has requested that I reply to your letter to him dated September 29, 1965.

"If you have a contract by the terms of which Patricia Pylate was to pay over to you a portion of any sum paid to her by Mr. Dip, certainly you are free to pursue your claim against her.

"Insofar as Mr. Dip is concerned, he was and is completely unaware of any such contract, as am I. You did not furnish him or me with a copy thereof nor even advise us of its existence. The lady whom you represented in Cause No. 39165–F has from time to time been represented by at least three different attorneys, to my knowledge. When she appeared unsolicited at my office with Mr. Dip and stated that she and Mr. Dip had agreed upon a settlement of their differences, I specifically asked her whether you still represented her and she replied that you did not, stating (as best I can recall her exact words), 'He is out of it.' This is the only time that I have seen or talked with her since the appeared in Court prior to your taking a nonsuit in Cause No. 39165–F. She and Mr. Dip wanted me to draw a contract settling their differences and I told them that I would not do so and could not advise either of them to sign any such contract unless there were a judicial determination of their status.

Sometime thereafter at Mr. Dip's request, I filed suit for a declaratory judgment and the Court entered judgment therein on September 16, 1965, as you know.

"Your statement in your letter to Mr. Dip that you took a nonsuit in Cause No. 39165–F 'in order to wait to refile said suit until Patricia Dip has been a resident of Tarrant County for six months' is likewise the first indication that Mr. Dip or I have had of any such intention. I was never so advised, nor was Mr. Dip. Mrs. Pylate sometime thereafter returned to Fort Worth and registered at a local motel. The manager has advised me that she stated to him that she lived in El Paso and was in Fort Worth temporarily for the purpose of settling an estate.

"Yours very truly,

"/s/ Thos. H. Law

"Thos. H. Law"

The letter was incorporated in the affidavit as a part thereof, and Law swore the facts stated in said letter were in all things true and correct.

In plaintiffs' reply to Law's motion for summary judgment plaintiffs called attention of the court to pleadings, orders and judgments in Patricia Dip v. Jow Ming Dip and Jow Ming Dip v. Patricia Jane Dip and the depositions on file. They contended in the reply: fact issues either established or raised to be submitted to the jury are the following: the question as to whether the plaintiffs had a contractual contingent interest in Patricia Dip's recovery or attempted recovery from Jimmy Dip; the question of whether the defendant Dip and/or the defendant Law knew of such interest on the part of the plaintiffs in such recovery; and/or whether either or both of the defendants were cognizant of facts and circumstances which would put them upon notice or inquiry of plaintiffs' interest in Patricia Dip's recovery.

No mention was made in the reply to Law's affidavit with letter to Bryan incorporated therein.

The parties have not cited, and we have not found, a Texas case where a debtor's attorney has been held liable to plaintiffs' attorneys for a settlement made between the debtor and the claimant without the knowledge of claimant's attorneys. Indeed, we find no case in which a debtor's attorney has been made a party defendant in a suit similar to the one before us.

Plaintiffs-appellants cite and rely upon Herron v. State Farm Mutual Insurance Company, 56 Cal.2d 202, 14 Cal.Rptr. 294, 363 P.2d 310 (1961). In that case the insurance company settled a claim knowing that claimant's attorneys had a contract with claimant. The suit was brought against the company and its agent for intentional interference with contractual relations. The trial court sustained a general demurrer. The Supreme Court reversed and remanded for a trial. It was made abundantly clear in the opinion that the company's agent was an instigator and active participant in a fraud practiced on claimant's attorneys. Said the Court, "An action will lie for the intentional interference by a third person with a contractual relationship either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification. * * * There is no valid reason why this rule should not be applied to an attorney's contingent fee contract." The court concluded that *"intentional interference with a contingent fee contract* may give rise to liability." It is clear that the court's holding was in favor of plaintiffs "because defendants induced the Halversons to repudiate the contract and deprive plaintiffs of its benefits." (Emphasis added.)

In support of their contention that Law is liable to plaintiffs because he was in possession of sufficient facts to put him on notice of plaintiffs' contract with Patricia, appellants cite Missouri, K. & T. Ry. Co. of Texas v. Wood, 152 S.W. 487 (Tex. Civ.App., 1912, writ dism.); Wichita Falls Electric Co. v. Chancellor & Bryan, 229 S.W. 649 (Tex.Civ.App., 1921, writ ref.),

and like cases which hold generally "'* * * actual notice exists when knowledge is actually brought home to the party to be affected by it, or where he might, by the use of reasonable diligence, have informed himself of the existence of certain facts. Any fact or circumstance that is sufficient to put a prudent man upon inquiry and is of such a character that he might ascertain the fact by the exercise of proper diligence will be regarded as notice. * * *' "

The Herron case is not in point because there is no hint of any act or word of Law purporting to "induce" Patricia to repudiate her contract with appellants.

The Texas cases cited do not of course deal with liability of attorneys in situations like the one before us, but hold that a defendant who has knowledge of claimant's attorneys' interest and settles with claimant without notifying claimant's attorney is liable to the attorney.

■ The judgment of the trial court must be viewed in the light of the following uncontradicted and undenied evidence.

Plaintiffs did not tell Law they had a written contract with Patricia Dip or that they had a contingent interest. Law, prior to entering the agreed Dip judgment, asked Patricia Dip if Mr. Bryan still represented her. She answered no, Bryan was "out of it." Law knew Patricia Dip had been represented by attorneys to sue Dip on the same matters prior to the time she employed Bryan. Patricia Dip broke her contract with plaintiffs, but plaintiffs have never brought suit against her for their $3,500.00 interest. Plaintiffs have not taken Patricia Dip's deposition to be used in their suit against Dip and Law, although they knew she was supposedly living in El Paso. Contradicted, but accepted as true, was Bryan's testimony he told Law at time of non-suit he intended to refile when Mrs. Dip met the six months' residence requirement.

Testimony of Law and Dip that they were told by Patricia that Bryan was no longer her attorney might be disregarded by a trier of fact since both are interested parties. Even if their evidence is disregarded, however, there is a total lack of evidence to the effect that she did not so inform them.

As a general rule an attorney has a right, in good faith, to advise and act upon the facts which he gets from his client, and it is not his duty to go elsewhere for information. Law had the word of his client as well as that of Patricia Dip that Bryan was no longer representing her.

Plaintiffs were doubtless entitled to sue and recover from Patricia Dip 25 percent of the amount she received in settlement from Dip. Their primary remedy was by way of a suit against their own client who breached her contract with them. Hill v. Cunningham, 25 Tex. 26 (1860); Wheeler v. Fronhoff, 270 S.W. 887 (Tex.Civ.App., 1925, writ dism.); 7 Tex.Jur.2d, p. 159, § 98; Travelers Fire Ins. Co. v. Steinmann, 276 S.W.2d 849 (Tex.Civ.App., 1955, ref., n. r. e.). But they did not sue her.

They, of course, can recover from Dip if they can prove the essential facts set out as necessary by the cited Texas cases in situations where the debtor settles with the claimant with knowledge of the attorney's interest.

It is a general rule that the duties of the attorney which arise from the relation of attorney and client, are due from the attorney to his client only, and not to third persons. The latter have not retained or employed the attorney, nor has he rendered any services for them, at their request or in their interest. No privity of contract exists between them and the attorney. For such injuries, therefore, as third persons may sustain by reason of the failure or neglect of the attorney to perform a duty which he owed to his client only, they have no right of action against the attorney. Savings Bank v. Ward, 100 U.S. 195, 25 L.Ed. 621 (1879); Dundee Mortgage & Trust Investment Co. v. Hughes, 20 F. 39 (Oregon Circuit Ct., 1884); Buckley v. Gray, 110 Cal. 339, 42 P. 900, 31 L.R.A. 862 (1895); and 7 Tex. Jur.2d, p. 206, § 136.

The above rule applies to the instant case, in view of the entire record, even if we assume that it was a "failure or neglect" of a duty Law owed to his client Dip when he did not tell Bryan of the pending settlement.

We hold that under the undisputed facts as disclosed by the record the trial court was correct in holding as a matter of law that there was an absence of genuine issue of any material fact, and that Law was entitled to judgment. Under the facts in this record Law was not under a legal duty to inquire from plaintiffs, pending the settlement, whether they still represented Patricia Dip.

Affirmed.