FRIEDMAN v DOZORC

Docket No. 31244. Submitted November 8, 1977, at Detroit.—Decided
    May 22, 1978. Leave to appeal applied for.

Defendants, Peter Dozorc and Robert Golden, are attorneys who
    filed and pursued on behalf of a client a medical malpractice
    action against plaintiff, Dr. Seymour Friedman, and others
    which resulted in a directed verdict of no cause of action at the
    close of plaintiff's proofs. Dr. Friedman's codefendants filed a
    motion for costs under a court rule allowing costs from a party
    making unreasonable allegations. The trial court denied the
    motion and found that the allegations were not unreasonable.
    Dr. Friedman filed suit against defendants Dozorc and Golden
    alleging negligence in filing and maintaining the medical mal-
    practice action, and abuse of process and malicious prosecution.
    Oakland Circuit Court, Frederick C. Ziem, J., granted an accel-
    erated judgment to defendants. Plaintiff appeals. *Held:*

    1. There can be no cause of action by a third party against a
    lawyer for negligence in performing duties for his client, even
    if his actions result in damage to the third party; the absence
    of a duty and policy considerations related to free access to the
    courts require this result.

    2. The gist of the tort of abuse of process is misusing or
    misapplying process, justified in itself, for an end other than
    that which it was designed to accomplish, not the commencing
    an action or causing process to issue without justification.

    3. The issue in a suit for malicious prosecution is whether or
    not there was probable cause to file and continue the litigation
    complained of; that issue is a question of law for the judge
    where the facts are not in dispute and a mixed question of law
    and fact for the trier of facts where the facts are in dispute.

    4. A determination that the suit by a party was not spurious
    does not determine the issue of whether or not the party's

REFERENCES FOR POINTS IN HEADNOTES
[1] 7 Am Jur 2d, Attorneys at Law §§ 196–200.
[2] 1 Am Jur 2d, Abuse of Process §§ 1, 2.
[3] 52 Am Jur 2d, Malicious Prosecution §§ 64, 65, 67.
    Attorney: liability of attorney acting for client, for false imprison-
    ment or malicious prosecution of third party. 27 ALR3d 1113.

attorneys had probable cause to initiate or proceed with that suit.

Reversed and remanded for further proceedings.

1. NEGLIGENCE—ATTORNEY AND CLIENT—THIRD PARTIES.

An attorney is not liable to third parties for the negligent performance of his obligations to a client, even where such negligence results in damage to third parties; the absence of a duty and policy considerations related to free access to the courts require this result.

2. TORTS—ABUSE OF PROCESS—DEFINITIONS.

The gist of the tort of abuse of process is not commencing an action or causing process to issue without justification but misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish.

3. TORTS—MALICIOUS PROSECUTION—ATTORNEY AND CLIENT—THIRD PARTIES.

The issue in a suit for malicious prosecution brought by a plaintiff against the attorneys of a person who had previously sued the plaintiff and lost is whether the attorneys had probable cause to file and continue the litigation complained of, which issue is a question of law for the judge if the facts are not in dispute and a mixed question of law and fact for the trier of facts if the facts are in dispute.

*Schureman, Frakes, Glass & Wulfmeier* (by *Charles F. Glass* and *Robert A. Obringer* and *Nederlander, Dodge & McCauley, P. C.,* of counsel), for plaintiff.

*Lopatin, Miller, Bindes & Freedman,* for defendant Dozorc.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *Charles T. McGorisk* and *Christine D. Oldani),* for defendant Golden.

Before: D. C. RILEY, P. J., and D. F. WALSH and A. C. MILLER,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

A. C. MILLER, J. This appeal raises the interesting question: Does an attorney owe a duty to persons other than his client?

Physician Friedman brings this suit against attorneys Dozorc and Golden alleging that they breached a duty owed to him in negligently filing and pursuing a medical malpractice suit against him that resulted in a directed verdict of no cause of action at the close of plaintiff's proofs. Codefendants in the original suit subsequently filed a motion for costs under GCR 111.6 which was denied by Judge Charles Farmer, the trial judge.

In addition to this claim in negligence, more traditional claims in the nature of abuse of process and malicious prosecution are joined. Even here, there is the innovative theory that continuing the proceeding after knowledge of its lack of merit constitutes further malicious prosecution.

## NEGLIGENCE

Plaintiff relies in part upon canon and court rules, the pertinent portions are as follows:

Canon 7 provides, "A Lawyer Should Represent a Client Zealously within the Bounds of the Law". Disciplinary Rule 7-102(a) provides:

> "(A) In his representation of a client, a lawyer shall not:
> (1) *File* a suit, *assert a position,* conduct a defense, delay a trial, or *take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.*
> (2) *Knowingly advance a claim or defense that is unwarranted under existing law,* except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.

(3) Conceal or knowingly fail to disclose that which he is required by law to reveal.

(4) Knowingly use perjured testimony or false evidence.

(5) Knowingly make a false statement of law or fact.

(6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.

(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.

(8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule." (Emphasis added)

Moreover, under GCR 1963, 114.2:

"The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information and belief, there is good ground to support it * * * ."

Plaintiff contends that the Canons, Disciplinary Rules and General Court Rules reiterate not only the basis of the duty to plaintiff, but also particularize the duty. The attorney must exercise reasonable and ordinary care and diligence in carrying out those duties. The plaintiff further contends that those duties are obviously designed to protect the general public from unwarranted or vexatious litigation and that where a duty exists, it is axiomatic that there be a corresponding remedy.

The position of the attorney being that of zealous advocate, the cases of *Williams v Polgar,* 391 Mich 6; 215 NW2d 149 (1974), referring to the duty owed by an abstractor to the public, and *Ultramares Corp v Touche,* 255 NY 170; 174 NE 441 (1931), referring to the similar duty owed by a

public accountant, are not analogous.[1] Their duty is to be accurate and it is foreseeable that persons other than their client will be relying upon their work product for accuracy. The duty of the advocate is to be zealous and the public is charged with *that* knowledge.

*State Bar Grievance Administrator v Corace,* 390 Mich 419; 213 NW2d 124 (1973), the Supreme Court addressed the parameters of Canon 7 at 434:

> "There are a large number of gray areas in the law. When a question is doubtful, the lawyer's obligation to his client permits him to assert the view of the law most favorable to his client's position. The *in terrorem* effect the Grievance Board reads into the Canon would unduly restrict a lawyer in fulfilling his professional responsibility of representing his client 'competently' (Canon 6) and 'zealously' (Canon 7)."

In a very similar case, the Louisiana Court found that no duty exists and therefore no cause of action. In *Spencer v Burglass,* 337 So 2d 596 (La App, 1976), the Court of Appeals of Louisiana was confronted with a situation in which the plaintiff physician sought damages against the defendant attorney. The latter party had commenced an earlier medical malpractice action on behalf of his client against the doctor. In rejecting the doctor's right to recover for the breach of any duty owed her, the *Spencer* Court at 600 stated as follows:

> "Plaintiff has cited no authority for her proposition that these standards provide her with a cause of action under a general tort or negligence concept. In order to establish liability on that theory plaintiff must allege

---

[1] The will drafting cases are not in point because there the interests of the testator and beneficiaries are *mutual* and not *adverse. Cf. Lucas v Hamm,* 56 Cal 2d 583; 15 Cal Rptr 821; 364 P2d 685 (1961), and *Parnell v Smart,* 66 Cal App 3d 833; 136 Cal Rptr 246 (1977).

and prove that defendant's filing the suit against her was a cause in fact of her alleged damages, that defendant breached a duty which created the very risk which the duty was designed to prevent and that defendant was negligent in filing the suit and/or trying the case against her. * * *

"When plaintiff's petition is evaluated in the light of this principle we must conclude that she fails to state a cause of action."

Free access is the policy reason for the rule, as stated in *Spencer, supra,* at 601.

"As a general proposition, therefore, public policy requires that all persons shall fully resort to the courts for redress of wrongs, and the law protects them when they act in good faith and upon reasonable grounds in commencing either a civil or criminal proceeding."

This principle was recently affirmed in the case of *Drago v Buonagurio,* 89 Misc 2d 171; 391 NYS2d 61 (1977). In that case the plaintiff-physician sought damages from the defendants, an attorney and his client who had earlier instituted a medical malpractice action against the plaintiff. As the facts developed, it became apparent that the physician had never treated the defendant-client's decedent prior to his demise.

The plaintiff complained that the attorney had acted negligently in his failure to investigate the facts surrounding the accident, in employing the action against the plaintiff as a discovery device and in conducting the practice of law in an unethical and malicious manner. The *Drago* Court found that the complaint alleged no facts upon which it could be found that there was any duty owing from the defendant to plaintiff:

"The courts of this state have consistently held that

an attorney is not liable to third parties for the negligent performance of his obligations to a client, even where such negligence results in damages to third parties." 391 NYS2d at 62–63.

The reason given for New York courts so holding was that a decision to act in a contrary manner would operate to discourage resort to the courts for the settlement of controversies and this would be contrary to public policy. A similar result is found in *Norton v Hines,* 49 Cal App 3d 917; 922–923; 123 Cal Rptr 237, 240–241 (1975), where the court specifically noted that sometimes it is necessary to file the suit before all the facts are known. This case was adopted by another panel of this Court in *Gasis v Schwartz,* 80 Mich App 600; 264 NW2d 76 (1978), as the basis for its decision to affirm a grant of summary judgment in a physician's counter suit. Quoting *Norton* from pages 922–923, the *Gasis* Court ruled:

" 'The attorney owes a duty to his client to present his case vigorously in a manner as favorable to the client as the rules of law and professional ethics will permit. He is an advocate and an officer of the court. He is cognizant of the public policy that encourages his clients to solve their problems in a court of law. * * * We believe the public policy of favoring free access to our courts is still viable. However, if Norton's cause of action against attorneys for negligence is permitted, this policy will be subverted.'

"We think the reasoning of the California court is sound and adopt it. Defendant attorneys owed no duty to plaintiffs to refrain from acting on behalf of their clients." *Gasis, supra,* at 603.

The foundation case in the area of legal malpractice is the decision of the United States Supreme Court in *Savings Bank v Ward,* 100 US 195,

198, 200, 202; 25 L Ed 621, 622–624 (1879), which carefully limited the duty:

"Proof of employment and the want of reasonable care and skill are prerequisites to the maintenance of the action * * *

"Beyond all doubt, the general rule is that the obligation of the attorney is to his client and not to a third party, * * *

" * * * it is not everyone who suffers a loss from the negligence of another that can maintain a suit on such grounds. On the contrary, the limit of the doctrine relating to actionable negligence * * * is, that the person occasioning the loss must owe a duty, arising from contract or otherwise, to the person sustaining such loss."

Despite the demise of the privity requirement, the existence of a duty is required and this is a question of law normally to be resolved by the judge. *Farwell v Keaton,* 396 Mich 281, 286; 240 NW2d 217 (1976).

The attorney is not without restraints on his conduct. In addition to the canons enforced by the licensing agencies or integrated bar, the attorney is responsible in damages for fraud, collusion or malicious prosecution. *Sefi Fabricators, Inc v Tillim,* 79 Misc 2d 213; 360 NYS2d 146 (1973). In *Rosenberg v Cyrowski,* 227 Mich 508, 513; 198 NW 905 (1924), our Supreme Court cited approvingly the following statement from 1 Thornton on Attorneys at Law, § 295:

"An attorney's liability does not end with being answerable to his client. He is also liable to third persons who have suffered injury or loss in consequence of fraudulent or tortious conduct on his part."

This exception to privity is confined to fraud. The Court went on to state at 514:

"Where there is fraud or collusion, the party will be held liable, even though there is no privity of contract."

Other jurisdictions have uniformly found an absence of duty and no liability in negligence cases. *Waugh v Dibbens,* 160 P 589 (Okla 1916), *Joffe v Rubenstein,* 24 App Div 2d 752; 263 NYS2d 867 (1965), *Lackey v Vickery,* 57 F Supp 791 (WD Mo, 1944), *McGlone v Lacey,* 288 F Supp 662 (D SD, 1968), *Weigel v Hardesty,* 549 P2d 1335 (Colo App, 1976), *Bryan & Amidei v Law,* 435 SW2d 587 (Tex App, 1968); *Carroll v Kalar,* 112 Ariz 595; 545 P2d 411 (1976), *Brian v Christensen,* 35 Cal App 3d 377; 110 Cal Rptr 688 (1973), *De Luca v Whatley,* 42 Cal App 3d 574; 117 Cal Rptr 63 (1974); Birnbaum, *Liability of Plaintiff's Counsel for Filing an Unjustified Professional Liability Suit,* 27th Annual Advocacy Institute, ICLE (1976), p 77.

The trial judge properly found that plaintiff failed to state a claim in negligence. GCR 117.2(1).

### ABUSE OF PROCESS

This cause of action was thoroughly discussed in *Rowbotham v Detroit Automobile Inter-Insurance Exchange,* 69 Mich App 142; 244 NW2d 389 (1976), in an opinion authored by Judge D. C. RILEY, a member of this panel.

The tort known as abuse of process envisions extraordinary process, not merely a summons, and its use to accomplish a purpose for which the writ was not designed. No possessory writ, lien or body process was issued in this case. The elements of the cause of action are stated by Judge RILEY in the above opinion at 146 as follows:

"The essential elements to an action for abuse of process are the existence of an ulterior purpose and an act in the use of the process not proper in the regular conduct or prosecution of the proceedings. The action lies for the improper use of the process after it had been issued, not for maliciously causing it to issue. *Spear v Pendill,* 164 Mich 620; 130 NW 343 (1911). To restate the proposition, the tort concerns the willful use of a valid process to obtain a result the law did not intend. *Moore v Michigan National Bank,* 368 Mich 71, 74; 117 NW2d 105 (1962)."

The difference between this cause of action and malicious prosecution is explained in Prosser, Torts (1st ed), p 673:

"Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, once it is issued, is the only thing of importance. Consequently in an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding has terminated in his favor, or that it was obtained without probable cause or in the course of a proceeding begun without probable cause."

The trial judge properly found that plaintiff failed to state a claim for abuse of process. GCR 117.2(1).

## MALICIOUS PROSECUTION

This tort arose in the criminal area and has been extended to the civil *(Rowbotham, supra,* at 147).* Plaintiff has alleged a claim that withstands the challenge under GCR 117.2(1) for failure to state a valid claim and a jury issue is presented

unless "there is no genuine issue as to any material fact". GCR 117.2(3). A close perusal of the record makes it clear that plaintiff contests every foundation fact asserted by defendant to be "undisputed". The trial judge endeavored to secure an agreed statement of facts or some substitute as a basis for his decision without success. With this state of the record, we arrive at the same point as the Court did in *Rowbotham, supra,* at 149:

"In the present case, we cannot say that the facts presented below are free from dispute. Without any specific facts, we find it difficult to accept the claim that this defendant had a good faith belief that it could seek suspension of Mr. Rowbotham's operator's license. We cannot agree that there was, as a matter of law, probable cause to request the certificate. The question remains one for the jury. See *LaLone v Rashid,* 34 Mich App 193; 191 NW2d 98 (1971)."

See also *Obeginski v James,* 4 Mich App 90, 92; 143 NW2d 579 (1966), where Judge, now Chief Justice, THOMAS G. KAVANAGH, wrote:

"With reference to the first question, it is firmly established that if the facts are not in dispute, the existence or want of probable cause is a matter of law to be determined by the court. *Rankin v Crane* (1895), 104 Mich 6 [61 NW 1007]; *Merriam v Continental Motors Corporation* (1954), 339 Mich 546 [64 NW2d 691]; *Renda v. International Union, UAW* (1962), 366 Mich 58 [114 NW2d 343]; and *Drobczyk v Great Lakes Steel Corp.* (1962), 367 Mich 318 [116 NW2d 736].

"It is equally well established that if the facts are in dispute, since probable cause is a mixed question of law and fact, it should be left to the determination of the jury under proper instruction. *Fine v Navarre* (1895), 104 Mich 93 [62 NW 142]; *Slater v Walter* (1907), 148 Mich 650 [112 NW 682] and *Hall v American Investment Co.* (1928), 241 Mich 349 [217 NW 18]."

The lower court having been unable to procure any agreed statement of facts and counsel having failed to present affidavits which could conceivably have eliminated fact issues on sufficient basics, the judge turned to Judge Farmer's decision denying costs under Rule 111.6 for disposition of the motion. This rule provides:

".6 Unwarranted Allegations and Denials. If it appears at the trial that any fact alleged or denied by a pleading ought not to have been so alleged or denied and such fact if alleged is not proved or if denied is proved or admitted, the court may, if the allegation or denial is unreasonable, require the party making such allegation or denial to pay to the adverse party the reasonable expenses incurred in proving or preparing to prove or disprove such fact as the case may be, including reasonable attorney fees."

Judge Ziem adds successful disposition of this motion to the successful disposition of the initial litigation *per se* as a condition precedent to a malicious prosecution suit. His opinion, in part, is as follows:

"In applying GCR 111.6 and on motion of Peoples Community Hospital, following the trial, Judge Farmer, the Trial Judge in the Wayne County lawsuit of *Serafin v Peoples Community Hospital, Dr. Friedman, et al,* refused to find that the claims put forth by the Defendants Dozorc and Golden on behalf of Serafin were unreasonable. At page 6 of the transcript, the record reveals:

*'Mr. Andrews (Attorney for Defendant Peoples Community Hospital):*

"I believe it was unreasonable under the facts of this case, your Honor."

*'THE COURT (Judge Farmer):*

"I don't believe so."

*       *       *

'*THE COURT (Judge Farmer):*

"I think that this is tantamount—your allegations would be tantamount to the claim that the plaintiff would have a spurious claim. I don't think so. I think that perhaps he, or she, did feel that there was a reason to bring this action. I don't think that it was unreasonable, from what I remember of the case." '

"Judge Farmer having ruled that the Serafin claim against the hospital was not spurious or unreasonable, it is only logical to conclude that the Serafin claim against Dr. Friedman was also not spurious or unreasonable especially in view of the fact that Dr. Friedman, through his attorneys, chose not to present this issue before the Trial Judge, who was completely familiar with the claims of the respective parties to that lawsuit, and would thus be in an ideal position to determine when the claims were unwarranted, unreasonable, spurious, or without probable cause.

"In this Court's opinion and under the facts and circumstances of this case, the Trial Judge's rulings apply to all of plaintiff's claims against both defendants in that lawsuit. The Trial Judge found that plaintiff, Serafin, through his attorneys (the defendants in this lawsuit), had not brought any unreasonable claims. The Trial Court also stated that the claims of Plaintiff Serafin were not spurious.

"Judge Farmer, being the Trial Judge and having heard all the evidence, was in a much better position than this Court to evaluate the merits of all of Serafin's claims against Dr. Friedman and the Peoples Community Hospital and to determine whether they were reasonable or not. He refused to classify the claims as spurious or unreasonable; and thus they did not fit within the meaning of the term 'unwarranted' as that word is used in GCR 1963, 111.6.

"In this Court's opinion, the ruling by Judge Farmer establishes the fact that Serafin's claims in that lawsuit were not unreasonable or brought without probable cause and thus Serafin's claims cannot serve as the basis of an action by Dr. Friedman against Serafin's

attorneys for malicious prosecution or abuse of process in this lawsuit."

As appealing as his logic may be, and with due recognition of the feeling that the original malpractice suit trial judge should have a special insight, nonetheless, we find no supporting authority. Neither does this fit into the traditional *res judicata* or collateral estoppel principles. *Cf. Howell v Vito's Trucking & Excavating Co,* 386 Mich 37; 191 NW2d 313 (1971). The issues are not the same and the parties are also different. In the GCR 111.6 motion, the issue was whether plaintiff Serafin brought a spurious suit against physician Friedman. In the present litigation, the issue is whether the defendants Dozorc and Golden, attorneys for Serafin, had probable cause to proceed with the suit initially or to continue it thereafter.

We must remand for trial to determine whether defendants had probable cause to file and continue the original malpractice litigation. The definition of probable cause applicable to these proceedings is set forth in *Tool Research & Engineering Corp v Henigson,* 46 Cal App 3d 675, 683–684; 120 Cal Rptr 291, 297–298 (1975), as follows:

"The attorney is not an insurer to his client's adversary that his client will win in litigation. Rather he has a duty 'to represent his client zealously * * * [seeking] any lawful objective through legally permissible means * * * [and presenting] for adjudication any lawful claim, issue, or defense." (A.B.A. Code of Professional Responsibility, EC 7-1; DR 7-101(A)1, discussed in 1 Witkin, Cal. Procedure (2d ed.) Attorneys, § 239.)

It is the attorney's reasonable belief that the client has a tenable claim and not the attorney's conviction that the client will prevail which is the measure of probable cause:

"The attorney's obligation is to represent his client honorably and ethically, and he may, without being guilty of malicious prosecution, vigorously pursue litigation in which he is unsure of whether his client or the client's adversary is truthful, so long as that issue is genuinely in doubt."

Reversed and remanded for further proceedings on the malicious prosecution claim in accordance with this opinion.