47 F.3d 1167
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Laura CALLAHAN, Plaintiff-Appellant,
v.
Louis E. SIMMONS, Judge of the Third Judicial Circuit Court
of Wayne County, and Kathy Vogt, Defendants-Appellants.
 No. 93-2024.
 United States Court of Appeals, Sixth Circuit.
 Feb. 23, 1995.
 
 On Appeal from the United States District Court for the Eastern District of Michigan.
 E.D.Mich.
 MOTION DENIED.
 Before: MILBURN, DAUGHTREY and WEIS*, Circuit Judges.
 PER CURIAM.
 
 
 1
 This appeal results from an interstate child-custody dispute involving the two children of the plaintiff-appellee, Laura Callahan, and her former husband, Richard D. Alexander, III. After state court litigation ended in her favor, Callahan filed suit in federal district court against her ex-husband and his wife, Sandra Alexander; the Alexanders' lawyer, Kathy Vogt; and the Michigan state judge who presided over the custody case, Louis F. Simmons. The complaint alleged, among other things, that all four of the defendants had conspired to deprive Callahan of her "right to freely associate with her children" and her "religious freedom"; that they were guilty of the intentional infliction of emotional harm, malicious prosecution, and negligence; that the Alexanders had engaged in "custodial interference"; and that Judge Simmons had had the plaintiff falsely imprisoned.
 
 
 2
 The district court dismissed the claims against Judge Simmons under Fed.R.Civ.P. 12(b)(6), apparently on the ground of absolute immunity. The court likewise dismissed the claims against attorney Kathy Vogt, although, again, the reason for this ruling is not clear on the face of the order. Finally, the district court dismissed the action against the Alexanders at the plaintiff's request. Hence, the only two parties before us on appeal are Simmons and Vogt. For the reasons stated below, we affirm the district court's judgment.
 
 1. Factual Background
 
 3
 Laura Callahan and Richard Alexander were divorced in Louisiana in 1987 and were given joint legal custody of their two children. Callahan, however, was given primary physical custody. In 1988, Alexander, a U.S. Coast Guard Employee, was transferred to Michigan, where he lived with his new wife, Sandra Alexander. It appears that Callahan later moved between Ohio, where her parents lived, and Louisiana, her place of employment. About a year after the divorce, Alexander kept custody of the children after one of their scheduled visits to Michigan and retained Kathy Vogt as his attorney to seek a Michigan custody award. Judge Louis F. Simmons, Jr., heard the case.
 
 
 4
 A referee recommended that the court dismiss the case for lack of subject matter jurisdiction under Michigan's version of the Uniform Child Custody Jurisdiction Act, M.C.L. Sec. 600.651-600.673. Despite the referee's recommendation and Callahan's argument that Louisiana had custody jurisdiction because "substantial evidence" about the children's care, protection, training, and relationships was in Louisiana, see M.C.L. Sec. 600.653.1(B), Judge Simmons nevertheless exercised jurisdiction over the case and ordered an evidentiary hearing. Following a three-day evidentiary hearing in January 1989, the court gave the Alexanders custody of both children.
 
 
 5
 After the children's visit with her about a year after the Michigan custody decree, Callahan filed an emergency motion for a temporary restraining order in Judge Simmons's court, claiming that her son had threatened suicide if she returned him to his father. Judge Simmons denied her motion, but set a date for an evidentiary hearing and required Callahan to bring her son to the hearing for evaluative purposes. When she came to the hearing without her son and refused to disclose his location, the court held her in contempt. She remained in jail for approximately eight and a half months, until her son turned up in Michigan. Subsequently, the Michigan Court of Appeals reversed Judge Simmons's original custody order on the ground that Michigan lacked jurisdiction over the child custody case.
 
 
 6
 Callahan resumed custody of the children and sued the Alexanders, Vogt, and Judge Simmons in federal court. When the district judge summarily dismissed the claims against Simmons and Vogt, Callahan appealed, raising, essentially, three grounds for relief. She argues, first, that Simmons cannot claim judicial immunity under the circumstances of this case. With regard to Vogt, she appeals only the dismissal of the malicious prosecution claim and the claim alleging a conspiracy to deprive Callahan of her right to associate with her children.
 
 2. The Claims Against Judge Simmons
 
 7
 Although the district court did not indicate its reasons for dismissing the case against Judge Simmons, Judge Simmons argued in his motion for dismissal that he was absolutely immune from liability. We therefore assume that the doctrine of judicial immunity formed the basis for dismissal. The plaintiff now argues that the judge is not immune from suit because he lacked subject matter jurisdiction to hear the case by failing to hold a preliminary hearing on the issue of the Michigan court's jurisdiction. She contends that the Parental Kidnapping Prevention Act, 28 U.S.C. Sec. 1738A(e), requires a judge to hold such a hearing, and she also insists that M.C.L. Sec. 600.654 requires a court to give parents "reasonable notice and an opportunity to be heard" before entering a custody decree. Judge Simmons's failure to hold a preliminary hearing, she asserts, stripped the judge of jurisdiction to hear the case and deprived him of immunity for subsequent acts in court.
 
 
 8
 In Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351 (1872), the Supreme Court held that:
 
 
 9
 A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction."
 
 
 10
 In addition, a judge will not be held immune for acts performed outside of his or her "judicial capacity." Stump v. Sparkman, 435 U.S. 349, 360 (1978). These two circumstances limit a judge's immunity. See Mann v. Conlin, 22 F.3d 100 (6th Cir.), cert. denied, 115 S.Ct. 193 (1994).
 
 
 11
 With regard to the first limitation on judicial immunity, the Supreme Court distinguishes acts done "in the clear absence of jurisdiction", for which no immunity is given, from actions in "excess of jurisdiction", for which immunity is provided. To distinguish the two situations, the Bradley court used an example a probate judge who would not be immune if he tried a criminal case, because he would clearly lack jurisdiction over that subject matter. By contrast, the court said, a criminal court judge would be immune from liability for convicting a defendant of a nonexistent crime. See Bradley, 80 U.S. at 351-2; Stump, 435 U.S. at 356 n. 6. See also King v. Love, 766 F.2d 962 (6th Cir.), cert. denied, 474 U.S. 971 (1985).
 
 
 12
 In this case, Judge Simmons clearly had jurisdiction over the subject matter of the case. A Michigan circuit court has general jurisdiction under M.C.L. 600.151, and thus can decide child custody. In Bowie v. Arder, 490 N.W.2d 568 (1992), the Michigan Supreme Court specifically acknowledged the circuit court's jurisdiction over child custody cases. In addition to his authority over child custody cases, Judge Simmons had jurisdiction to hold litigants in contempt for violating his orders. M.C.L. Sec. 600.1701. Therefore, in exercising jurisdiction over the child custody case and in holding Callahan in contempt of court, Judge Simmons remained within the bounds of his jurisdiction.
 
 
 13
 With regard to the issue of whether the judge acted within his judicial capacity, Stump indicates that a "judicial" act involves two factors: (1) whether the act is "a function normally performed by a judge," and (2) whether the situation is one in which the parties "dealt with the judge in his judicial capacity." Stump, 435 U.S. at 362. Custody determinations and the issuance of contempt orders are functions normally performed by a judge. In this case, therefore, the parties dealt with Judge Simmons in his judicial capacity as he performed these functions.
 
 
 14
 Because Judge Simmons acted within the bounds of his court's jurisdiction, and because each of the acts about which Callahan complains was a "judicial act," Judge Simmons is absolutely immune from liability. We therefore conclude that the district court properly dismissed the claims against him.
 
 3. The Conspiracy Claim against Vogt
 
 15
 Callahan originally claimed that all four defendants tortiously conspired to deprive her of right to associate with her children, which, she alleged, is a liberty interest protected by the Fourteenth Amendment. She contended that Judge Simmons acted under color of state law and thus violated 42 U.S.C. Sec. 1983. With regard to Kathy Vogt, Callahan stated in her complaint that Vogt "did willfully conspire with her clients, Sandra and Richard Alexander III, thus contravening state and federal policy and in clear negligence of Michigan and federal law, to deny all communication and visitation between said children and Plaintiff." She alleged specific acts intended to "persecute" her, including the change in custody, her incarceration, a kidnapping charge issued and dropped within 24 hours, a bench warrant issued for her failure to pay child support, and a late-night call from the Alexanders instructing her to pick up the children immediately. She alleged that the "piling on of charges is evidence of Defendant's [sic] concert of action and intent to exercise their own power and control over the Plaintiff's constitutionally protected rights."
 
 
 16
 Kathy Vogt, on the other hand, argues that the Fourteenth Amendment establishes no liberty interest in free association with one's children, that a claim under 42 U.S.C. Sec. 1983 is untenable because she is not a state actor, and finally, that the plaintiff fails to provide any supporting facts beyond her bald allegations of a tortious conspiracy.
 
 
 17
 As pleaded, Callahan's allegations can be interpreted as a claim under Sec. 1983 and as an independent tort claim. If Callahan's conspiracy claim is read as a Sec. 1983 claim, however, it must be dismissed. Vogt erroneously argues that custody of one's children is not a constitutionally protected liberty interest. See Santosky v. Kramer, 455 U.S. 745, 753 (1982); Hooks v. Hooks, 771 F.2d 935, 941 (6th Cir.1985); Stanley v. Illinois, 405 U.S. 645, 651 (1972). Nevertheless, Callahan must allege state action in order to claim a violation of 42 U.S.C. Sec. 1983. Although Vogt is not a state actor, if she conspired with Judge Simmons to deprive Callahan of a constitutional right, she would be liable under Sec. 1983, for "[p]rivate persons jointly engaged with state officials in a deprivation of civil rights are acting under color of law for purposes of Sec. 1983." Hooks, 771 F.2d at 943 (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 941 (1982)). Callahan, however, alleges only that Vogt conspired with the Alexanders; she alleges no facts to support a conspiracy between the judge and Vogt to deprive the plaintiff of her civil rights. As this court stated in Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir.1987), "conspiracy claims must be pled with some degree of specificity and ... vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under Sec. 1983."
 
 
 18
 If the complaint is read to allege a civil conspiracy claim, the appellant fares no better. Under Hooks,
 
 
 19
 [a] civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.
 
 
 20
 Hooks, 771 F.2d at 943-4. In this case, two problems bar a conspiracy claim against Vogt. First, Callahan does not allege that Vogt committed an unlawful activity. Callahan alleged that Vogt conspired with her clients to deprive Callahan of her constitutionally protected right to associate with her children, but Vogt was under no legal obligation to protect that right. Callahan also alleged that Vogt violated the valid custody decree. A lawyer's challenge to a custody decree, however, is not an unlawful action giving rise to a conspiracy action.
 
 
 21
 Although Callahan's complaint does not allege that Vogt counseled the Alexanders to violate the decree, Callahan's brief states that Vogt "counseled her client to retain his children from the mother" before Alexander filed the custody petition, and that Vogt did not disclose to the court the existence of the Louisiana child custody decree. If true, these actions could be considered unethical. However, they are not mentioned in the complaint in support of the conspiracy claim. Therefore, we need not consider whether a lawyer's allegedly unethical actions support a conspiracy claim.
 
 
 22
 We conclude that the district court properly dismissed the conspiracy claim against Vogt.
 
 
 23
 4. The Malicious Prosecution Claim against Vogt
 
 
 24
 Callahan claims that Vogt is liable for malicious prosecution. The elements of malicious prosecution under Michigan law are
 
 
 25
 (1) prior proceedings terminated in favor of the present plaintiff, (2) absence of probable cause for these proceedings, and (3) "malice," more informatively stated by the Restatement as "a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based."
 
 
 26
 Friedman v. Dozorc, 312 N.W.2d 585, 603 (Mich.1981). In addition to these three elements, in Friedman, the Michigan Supreme Court retained the "special injury" requirement for malicious prosecution cases, providing that "in the absence of an arrest, seizure, or special damage, the successful civil defendant has no remedy despite the fact that his antagonist proceeded against him maliciously and without probable cause." Id. at 596. The court defined special injury as injury "in the nature of an interference with person or property." Id. Thus, unless all four of these elements are alleged, Callahan's malicious prosecution claim must be dismissed. Although the Michigan custody battle ultimately ended in Callahan's favor, satisfying the first element of her malicious prosecution claim, the remaining elements are not established by the allegations in the complaint.
 
 
 27
 First, Callahan does not allege facts that establish an absence of probable cause to file a custody petition. The Michigan Supreme Court insisted in Friedman that "[t]he absence of probable cause in bringing a civil action may not be established merely by showing that the action was successfully defended." Id. Callahan relies on the Court of Appeals's decision in Friedman, 268 N.W.2d 673, 679 (Mich.Ct.App.1978), aff'd in part & rev'd in part, 312 N.W.2d 585 (Mich.1981), which applied a probable cause standard requiring an attorney to make a reasonable investigation into the law and the facts before filing suit. The Michigan Supreme Court, however, rejected that definition of probable cause as too demanding of plaintiffs' attorneys. Instead, the Court adopted the Restatement's approach, stating that
 
 
 28
 [o]ne who takes an active part in the initiation, continuation or procurement of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and ... correctly or reasonably believes that under those facts the claim may be valid under the applicable law....
 
 
 29
 Friedman, 312 N.W.2d at 606 (citing Restatement (Second) of Torts Sec. 675 (1977)). In this case, although the Michigan Court of Appeals ultimately found that under the Uniform Act, Judge Simmons lacked jurisdiction to hear the custody case, and that the mere presence of the children in Michigan did not establish Michigan jurisdiction under M.C.L. Sec. 600.653(2), Vogt could reasonably have interpreted M.C.L. Sec. 600.653(1)(b), as Judge Simmons did, to mean that the need to determine the "best interest of the children" permits Michigan jurisdiction in light of the children's significant connections with the state. Under the Friedman rule, because Vogt could reasonably have believed that Michigan had jurisdiction over the custody case, Callahan cannot show an absence of probable cause to bring a child custody case.
 
 
 30
 With regard to the "malice" requirement of the claim, Friedman states that a lawyer "who 'acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim,' albeit with knowledge that the claim is not tenable, should not be subject to liability." Id. at 607 (citing Restatement (Second) of Torts Sec. 674, cmt. d). Thus, the complaint must allege an "improper purpose on the part of the unsuccessful attorney" and that allegation must be supported by evidence "independent of the evidence establishing that the action was brought without probable cause." Id. Because the facts alleged in the complaint indicate that Vogt acted for no other reason than to help the Alexanders gain custody, the malice requirement is not sufficiently pleaded. The plaintiff alleged that the acts described were intended to harass her and to deprive her of custody, but this bald statement is an inadequate basis for her claim.
 
 
 31
 Finally, in her complaint, Callahan alleged that she suffered emotional and financial harm from the malicious prosecution, but she alleged no special damages to person or property. Because Callahan's malicious prosecution claim incorporated all of the facts that she mentioned in other claims, her incarceration for contempt might be claimed as special damages. However, Callahan did not allege in the complaint that Vogt was responsible in any way for the court's decision to hold Callahan in contempt. That injury, therefore, would not provide a basis for special damages in a malicious prosecution claim against Vogt.
 
 
 32
 In summary, we find that Callahan pleaded insufficient facts to show the absence of probable cause, malice or special injury. The district court, therefore, properly dismissed the malicious prosecution claim against Vogt for failure to state a cause of action.
 
 
 33
 For all the reasons stated above, we AFFIRM the judgment of the district court, dismissing the plaintiff's complaint against the remaining defendants, Simmons and Vogt. Regarding the motion for costs and attorney fees filed by Vogt pursuant to 28 U.S.C. Sec. 1927 and Fed.R.App.P. 38, we conclude that, although the question is a close one, the motion should be denied.
 
 
 
 *
 The Hon. Joseph F. Weis, Jr., Senior United States Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation