**Lloyd BELL et ux., Appellants,**

v.

**William C. MANNING et al., Appellees.**

**No. 1422.**

Court of Civil Appeals of Texas, Tyler.

Feb. 26, 1981.

Rehearing Denied March 26, 1981.

Gaddy Wells, James N. Parsons, Parsons, Thorn & Wells, Palestine, for appellants.

John Mosley, Morgan & Mosley, Kaufman, for appellee.

MOORE, Justice.

This is an appeal from a summary judgment rendered in favor of an attorney in a suit filed by a non-client seeking damages for negligent misrepresentation. Plaintiffs, Lloyd Bell and wife, Mildred Bell, instituted suit against William C. Manning, Esq., alleging that in the course of the closing of a contract for the construction of a house upon plaintiffs' property, defendant William C. Manning, the attorney representing J. W. Guill, the contractor, acting by and through his secretary, made certain false representations to the plaintiffs by stating that it was necessary for them to execute a deed of trust to the Kaufman State Bank securing the payment of a mechanic's lien note. Plaintiffs alleged that defendant's secretary failed to exercise reasonable care or competence in obtaining and communicating this information to the plaintiffs and

as a result the plaintiffs relied upon false information which proximately caused them damage. They further alleged that after paying the contractor practically all of the construction cost in cash, the contractor assigned the mechanic's lien note to the bank and secured additional funds which they were forced to pay when the bank threatened to foreclose under the deed of trust and but for the false misrepresentation that a deed of trust was necessary the bank would have been unable to enforce its claim.

Defendant, William C. Manning, responded with a motion for summary judgment. As grounds for the motion Manning alleged that he is entitled to a summary judgment because the uncontroverted summary judgment evidence establishes as a matter of law that no privity of contract existed between him and the plaintiffs. He alleged that since privity was one of the essential elements of plaintiffs' cause of action and the summary judgment proof shows as a matter of law that there is no genuine issue of fact on such essential issue, he was entitled to a summary judgment. In their reply to the motion for summary judgment, plaintiffs admitted that they did not retain the defendant to represent them in the closing transaction in question and that there was no privity of contract. Plaintiffs alleged, however, that although there was no privity of contract between the plaintiffs and defendant, the pleadings, when taken together with the depositions, affidavits and other summary judgment proof on file shows that the cause of action asserted against the defendant sounds in tort rather than contract. Consequently, they say that the question of whether there was privity of contract is immaterial. After a hearing, the trial court granted the defendant's motion for summary judgment, decreeing that plaintiffs take nothing by their suit, from which judgment plaintiffs perfected this appeal.

We affirm.

The material facts are not in dispute. Viewing the evidence in a light most favorable to the plaintiffs, as we must, the summary judgment proof shows that in early June 1977, plaintiffs contacted J. W. Guill, a building contractor, for the purpose of building a house on property owned by them in Henderson County, Texas. At that time plaintiffs were residents of Texas City, Texas. On June 15, 1977, after plans and specifications had been worked out, the contractor agreed to build the house for the sum of $67,900. On the same day Mr. Guill, the building contractor, instructed his attorney, William C. Manning, to prepare a mechanic's and materialman's lien contract, a mechanic's lien note to be executed by plaintiffs in the amount of $67,900, as well as a deed of trust to the First National Bank of Kaufman, Texas. Defendant Manning instructed his secretary, Delores Sexton, to prepare the instruments. Later that day Mr. and Mrs. Bell and Mr. Guill went to Manning's law offices for the purpose of closing the transaction. Plaintiffs did not know Mr. Manning and had never been to his offices prior to this time. When the parties arrived at the Manning law offices, Mr. Manning was not there. Delores Sexton, his secretary, was the only person in the office. Mr. Guill, the building contractor, introduced Mrs. Sexton to the Bells but did not mention her name. Mr. Bell testified by deposition that he was of the impression that Mrs. Sexton was attorney Manning. It is undisputed that neither Mr. Guill nor Mrs. Sexton represented that she was an attorney or that her name was Manning. After making a cursory examination of the instruments, Mr. Bell stated that since he intended to pay cash for the construction of the house, he did not understand why it was necessary to execute the deed of trust to the Bank and that he should not be required to sign any instrument except the mechanic's and materialman's lien contract. Thereupon he pushed the unsigned instruments back toward Mrs. Sexton as if he did not intend to sign either of the instruments. After further discussion, Mr. Bell then asked Mrs. Sexton why she had prepared a deed of trust when he was going to pay cash. In reply Mrs. Sexton said: "That's a legal way—to get your house built, that's the way its got to be

done." Thereupon the Bells signed the instruments. Mr. Bell testified that in signing the instruments he relied upon Mrs. Sexton's statements because he believed she was an attorney. Although Mr. Bell later testified by deposition that it was his intention to finance the construction of the house on a cash basis with funds he had on deposit in Texas City, it is undisputed that no part of the construction cost had been advanced to Guill at the time the instruments were presented to plaintiffs for signing nor is there any evidence that parties had entered into a prior agreement that the construction would be paid for in cash. It appears from the record that what Mr. Bell meant when he said he was going to pay cash was that he intended to advance the cash as the construction progressed.[1]

Shortly after the instruments had been executed, the contractor commenced work on the house. The record shows that between July 6, 1977, and February 1, 1978, plaintiffs made cash advances to the contractor in the amount of $57,266. The funds were advanced periodically as the work progressed. The contractor thereafter abandoned the job before the house was completed. According to Mr. Bell, the sum of $2,300 was due and owing to the air conditioning subcontractor. In addition to this, he testified that an expenditure in the amount of $6,000 would be required to complete the house according to the plans and specifications. While the record is not clear, it appears that the building contractor, at some undisclosed time, assigned the mechanic's and materialman's lien contract and note to the Kaufman State Bank and that the bank advanced him some funds thereon. At any rate, the undisputed testimony of Mr. Bell shows that when the bank threatened to foreclose, he paid the bank $26,000. According to the unchallenged statement in plaintiffs' brief Mr. Guill, the building contractor went into bankruptcy after he abandoned the contract.

By a single point of error, plaintiffs contend that the trial court erred in rendering summary judgment for attorney Manning because he failed to prove, as a matter of law, that no genuine issue of material fact existed as to one or more of the essential elements of plaintiffs' cause of action for negligent misrepresentation. In reply, defendant takes the position that privity of contract is an essential element of plaintiffs' cause of action and since the lack of privity is undisputed, the alleged representations by his secretary that the execution of the deed of trust was necessary in order to make the transaction legal, even if false, is not actionable due to the lack of the essential element of privity. Consequently defendant maintains that the trial court properly disposed of the case by entering a summary judgment. In reply, plaintiffs contend that a summary judgment was not proper because the cause of action asserted by them sounds in tort rather than in contract and therefore privity is not an essential element of their cause of action. In their brief plaintiffs argue that the cause of action sounds in tort because it is grounded on a negligent misrepresentation pursuant to sec. 552, Restatement (2d) of Torts (1977), which reads as follows:

> One who, in the course of his business, profession or employment ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Most jurisdictions, and particularly the more recent decisions, have recognized a cause of action for negligent misrepresentation. 37 Am.Jur.2d Fraud & Deceit, sec. 209; 32 A.L.R.2d 232. This general rule of law has been adopted in Texas. *Shatterproof Glass Corp. v. James*, 466 S.W.2d 873 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.); *Rosenthal v. Blume*, 529 S.W.2d 102

---

1. The mechanic's lien contract shows that the Bells agreed to pay $22,633.00 when the slab was poured and the exterior materials were delivered to the job site; $22,633.00 when the house was completed on the outside, the ductwork was installed, and rough-in wiring was done; and the balance upon completion of construction of the house.

(Tex.Civ.App.—Waco 1975, writ ref'd n.r. e.). While the foregoing Texas cases hold that professionals, such as accountants and doctors may be held liable to third parties not in privity for negligent misrepresentation, we have found no Texas case, and have been cited none, holding an attorney liable to a non-client third party for negligent misrepresentation in the absence of privity. In Texas, as well as a majority of the jurisdictions, attorneys have been held to owe no duty to third party non-clients.

Several Texas courts have had occasion to consider the general issue of whether or not an attorney should be held liable in negligence to a party other than his client for damages resulting from the performance of the attorney's services. See, *Bryan & Amidei v. Law*, 435 S.W.2d 587 (Tex.Civ.App.—Fort Worth 1968, no writ); *Traders & General Ins. Co. v. Keith*, 107 S.W.2d 710 (Tex. Civ.App.—Amarillo 1937, writ dism'd); *Citizens' National Bank of Cameron v. Morrison*, 50 S.W.2d 346 (Tex.Civ.App.—Austin 1932, no writ); Tex.Jur.3d Attorney at Law, sec. 166, p. 518. These cases have generally concluded that an attorney is not liable to a party, other than his client, for damages resulting in the performance of his service requiring professional skill and ability. It is said that an attorney, in representing his client, deals at arms length with adverse parties and consequently is not liable to such adverse parties for his actions, because while acting in that capacity he owes no duty to the non-client third party.

In *Bryan & Amidei v. Law*, supra, at 593, the court stated:

It is a general rule that the duties of the attorney which arise from the relation of attorney and client are due from the attorney to his client only, and not to third persons. The latter have not retained or employed the attorney, nor has he rendered any services for them, at their request or in their interest. No privity of contract exists between them and the attorney. For such injuries, therefore, as third persons may sustain by the reason of the failure or neglect of the attorney to perform a duty which he owed to his client only, they have no right of action against the attorney.

The vast majority of adjudicated cases in the United State considering an attorney's liability to non-client third parties for his negligence is in accordance with these principles. See cases cited in Annot., Attorneys Liability, To One Other Than His Immediate Client for Consequences of Negligence in Carrying Out Legal Duties, 45 A.L.R.3d 1181, 1187 (1972).

In this state attorneys are subject to the Code of Professional Responsibility as set forth in State Bar of Texas, Rules and Code of Professional Responsibility, Title 14, App. A, art. XII, sec. 8. Section 8 paragraph EC 5–1 reads as follows:

The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client.

■ In the present case it appears that the attorney and his secretary undertook to discharge their responsibility despite the fact that Mr. Bell insisted on handling the transaction in a different manner. While Mr. Bell testified in his deposition that he told Mrs. Sexton at the time of the closing that he was going to pay cash for the construction of the house, there is nothing in the record indicating that the parties ever made an agreement to that effect prior to the time of the closing transaction. Under these circumstances, Manning owed a duty to his client to follow his instructions and obtain a deed of trust lien to secure the payment of the note. Since there was no agreement that the house was to be constructed on a cash basis, the statement made by Mrs. Sexton that the deed of trust had to be signed in order to make the transaction legal, did not amount to a false representation of fact but was a legal representation made for the purpose of letting Mr. Bell know that his objection to the deed of trust would not affect the loyalty owed to her employer's client. In these circum-

stances, we fail to see how the remarks made by Mrs. Sexton could be classified as a negligent misrepresentation especially since there is no evidence of an agreement between the parties that the house was to be constructed on a cash basis. Even if her remarks could be construed to be a negligent misrepresentation, to hold the defendant liable to the Bells with whom his client dealt with at arms length, would inject undesirable self-protective reservations into the attorney's counselling role. The attorney's preoccupation or concern with the possibility of claims based on mere negligence (as distinguished from fraud) by any with whom his client might deal would prevent him from devoting his entire energies to his client's interest. The result would be both an undue burden on the profession and a diminution in the quality of the legal services received by the client. It would also tend to encourage a party to contractual negotiations to forego personal legal representation and then sue counsel representing the other contracting party for negligent misrepresentation if the resulting contract later proves disfavorable in some respect. *Chalpin v. Brennan*, 114 Ariz. 124, 559 P.2d 680 (Ct.App.1976).

Plaintiffs cite and rely upon the case of *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz*, 57 Cal.App.3d 104, 128 Cal.Rptr. 901 (1976), as authority for the proposition that an attorney may be held for negligent misrepresentation in the absence of privity. We do not find this case to be dispositive. The case was not brought under Section 552, Restatement (2d) of Torts. The liability of the attorney in that case was made to rest on fraud and deceit as defined by the California statute. Consequently the case is distinguishable.

Our holding in the present case certainly does not emancipate attorneys from the consequences of fraud.

■ After a review of the Texas cases as well as those from other jurisdictions, we hold that the defendant in the present case owed no duty to the plaintiffs and therefore is not liable to the plaintiffs for his actions as an attorney in behalf of his client in the absence of privity.

Accordingly, the judgment of the trial court is affirmed.

McKAY, J., not participating.