**STONEWALL SURPLUS LINES INSURANCE COMPANY, Appellant,**

v.

**Jaime A. DRABEK and Hirsch, Glover, Robinson & Sheiness, Appellees.**

No. 13–91–358–CV.

Court of Appeals of Texas, Corpus Christi.

June 18, 1992.

Rehearing Overruled July 30, 1992.

Charles B. Lord, Law Offices of C.L. Ray, Austin, Richard Morrison, Ronald D. Krist, Krist, Gunn, Weller, Neumann & Morrison, Houston, C.L. Ray, Austin, for appellant.

D. Ferguson McNiel, Michael D. Fisse, R. Glenn Rigby, Vinson & Elkins, Houston, Tony Martinez, Martinez, Barrera & Robles, Brownsville, for appellee.

## OPINION

SEERDEN, Justice.

This is a summary judgment case. Appellant, Stonewall Surplus Lines Insurance Company, was the excess insurer for several insureds in a wrongful death suit. Appellees, Jaime A. Drabek and the law firm of Hirsch, Glover, Robinson, & Sheiness (collectively "Hirsch, Glover"), were hired by the primary insurance carrier to defend the suit. After the wrongful death suit was settled, appellant brought this suit for damages against appellees and the primary carrier alleging negligence by the defendants which proximately caused appellant to pay substantially more to settle the death case than it should have had to pay. Appellees filed motions for summary judgment which the trial court granted. This case was severed from the suit against the primary carrier and this appeal perfected. We reverse the trial court's judgment and remand the case for a trial on the merits.

During the course of the death suit, the trial court entered a sanctions order against the insureds. It found that they abused the discovery process when they refused to submit to depositions and to comply with a request for production. The trial court struck their pleadings and rendered a partial default judgment against them regarding their joint and several liability to the survivors for actual damages. It also ordered that the only issues for trial would be: (1) the amount of actual damages; (2) whether the insureds were grossly negligent; and (3) the amount of exemplary damages which would be assessed

against them upon a finding of gross negligence.

After the sanctions were imposed, the case was settled for $1.8 million. Of that amount, Stonewall paid $1.3 million and the primary carrier paid $500,000, its policy limits.

In the instant suit, it is alleged that appellees' negligence caused the trial court to strike the insureds' pleadings and that such negligence proximately caused damages to appellant.

Appellees' motion for summary judgment contended that: (1) under Texas law, an attorney does not owe a duty to a non-client; and (2) nothing that appellees did or did not do proximately caused Stonewall any damages. The trial court granted the summary judgment. In its order granting summary judgment, the court found that: (1) appellees did not represent appellant and did not owe it a duty; (2) appellees still had available options with respect to the sanctions order, but as a result of Stonewall settling the death suit, those options were no longer available; and (3) Stonewall's summary judgment proof did not raise a genuine issue of material fact, precluding appellees' right to summary judgment as a matter of law.

■ Appellant's first point of error complains that the trial court erred in granting defendants' motion for summary judgment. This point is sufficient to raise any issues presented to the trial court and raised in appellant's brief. *Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970).

The first question to be resolved is whether appellees, the attorneys hired by the primary carrier to defend the insured parties, owed any duty to appellant.[1]

■ It is well settled that persons outside the attorney-client relationship do not have a cause of action for injuries they might sustain due to the attorney's failure to perform or his negligent performance of

a duty owed to his client. *Dickey v. Jansen*, 731 S.W.2d 581, 582 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). In the absence of privity of contract, an attorney owes no duty to third-party non-clients. *Draper v. Garcia*, 793 S.W.2d 296, 301 (Tex.App.—Houston [14th Dist.] 1990, no writ); *First Mun. Leasing Corp. v. Blankenship, Potts, Aikman, Hagin and Stewart*, 648 S.W.2d 410, 413 (Tex.App.—Dallas 1983, writ ref'd n.r.e.); *Bell v. Manning*, 613 S.W.2d 335, 339 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.).

■ Appellant does not dispute this general rule; however, it contends that the rule does not apply in this case. We agree. It is undisputed that the named defendants in the underlying death case had purchased liability insurance from the primary carrier with limits of $500,000. In addition, the primary carrier became obligated to furnish the insureds a defense in any suit brought by third parties concerning matters covered by the insurance contract. The underlying death case was such a suit. The primary carrier, pursuant to its contract, hired appellees to defend the case on behalf of its insureds. In doing so, appellees owed the defendants in the underlying suit the unqualified duty to conscientiously and adequately represent them. *Employers Casualty Co. v. Tilley*, 496 S.W.2d 552, 558 (Tex.1973). An attorney, like any other individual, is answerable in tort for any negligent performance of his employment obligations. *Zidell v. Bird*, 692 S.W.2d 550, 553 (Tex.App.—Austin 1985, no writ).

It is also undisputed that the defendant companies in the underlying suit, in addition to the primary coverage, had purchased excess liability coverage which obligated the excess carrier, in this case appellant, to pay any excess over the primary coverage not to exceed $3,000,000, which the insureds became obligated to pay and which arose from an incident covered by

1. This case was originally submitted to a three-judge panel of this Court. At the original submission, appellees' main thrust in argument was that they owed no duty to appellant. Because of disagreement between the judges of the original panel and in accordance with the rules of this Court, the case was discussed en banc and re-submitted to the entire Court. At the second submission, appellees' argument focused on its contention that appellant suffered no damage by virtue of the trial court's sanctions order.

the primary policy. Appellant contends that it stands in the place of the insureds and that it is subrogated to their rights by reason of having been required to pay more money in settlement of the wrongful death case than it would have had to pay otherwise were it not for the negligence of appellees. There is no dispute that the insureds would have a cause of action against appellees, their attorneys, for damage caused by their negligent representation. The question is whether appellant should be subrogated to the rights of the insureds. While the question has not been specifically answered with reference to excess insurance companies, the principle of equitable subrogation has been adopted in Texas. This Court has held that:

> [w]here the insurance policy is regarded as one of indemnity ... the company on payment of the loss is subrogated to any rights which the insured may have against the person alleged to be responsible for the loss. (citations omitted) The right of subrogation is not dependent upon an express stipulation in the policy or upon an actual assignment of the cause of action by the insured; ... payment of the loss operates as an equitable transfer of the claim. (citations omitted).

*International Ins. Co. v. Medical–Professional Bldg.*, 405 S.W.2d 867, 869 (Tex. Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.). This case was cited with approval and the principle confirmed in *Thoreson v. Thompson*, 431 S.W.2d 341, 347 (Tex.1968).

Appellees argue that *American Centennial Ins. v. Canal Ins.*, 810 S.W.2d 246 (Tex.App.—Houston [1st Dist.] 1991, writ granted), is authority for their position that they owed no duty to appellant and that equitable subrogation should not be adopted in Texas in this instance. We disagree. *American Centennial* is similar in some respects, but distinguishable from this case. *American Centennial* involved an excess carrier suing the primary carrier and the lawyers who handled the underlying suit for the same type conduct complained of in our case. Summary judgment was granted for both the primary carrier and the lawyers. The Court of Appeals

reversed as to the primary carrier, holding that equitable subrogation applied under the doctrine defined in *Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544 (Tex.Comm'n App.1929, holding approved); and *Ranger County Mut. Ins. Co. v. Guin*, 723 S.W.2d 656 (Tex.1987). *Id.* at 252. The Court characterized the *Stowers* duty as contractual. It further held that the *Stowers* duty only exists between the primary carrier and the insured and does not extend to the excess insurance carrier. Because the trial court in our case severed the appellants' suit against the primary carrier, this part of the *American Centennial* case is not relevant to us.

The Appellate Court in *American Centennial* also considered the aspects of the excess carrier's claim against the attorneys for legal malpractice and negligence against the attorneys hired to represent the insured. The Court noted that these claims are governed by the two-year statute of limitations and under the facts of that case, the insured's claim was barred by such statute. Since the insured's claim was barred, the excess carrier's claim was barred.

Our case is based on the negligence and legal malpractice of appellees; however, there is no limitation claim in our case.

A part or all of a claim for legal malpractice can be assigned, just as any other negligence claim. There is nothing in *American Centennial* which even implies that such a claim cannot be assigned or subrogated; in fact, in holding that the excess carrier's claim is defeated by the affirmative defense of limitations, it implies that, but for such defense, the claim would be upheld. We hold in this case that appellants are subrogated to the insureds' claim for legal malpractice and negligence against appellees and that the trial court's finding of no duty is erroneous.

On May 12, 1992, this case was re-submitted to the Court en banc. In oral argument, appellees argued the second ground of its motion for summary judgment, that as a matter of law appellant suffered no damage because of the imposition of the

sanction order. Appellees argued appellant voluntarily settled the lawsuit and paid the money when there were still viable and defensible procedural and substantive grounds for defending the suit. Appellees contended that the sanction order was clearly an abuse of discretion and could have been reversed on appeal. In addition, the claim was made that plaintiff still had to prove gross negligence and the amount of punitive damages. This argument ignores the fact that the sanction order entered a partial default judgment against the corporate defendants and provided "that the only issues that will be decided at trial are: (1) the amount(s) of the actual damages proximately caused by their negligence or their agents, (2) whether they were grossly negligent, and (3) the amount(s) of exemplary damages, if any, to be separately assessed against them upon a finding of gross negligence, if any." Appellees contend that the fact that the plaintiffs in the underlying suit had not pleaded actual damages makes the judge's order, relative to actual damages, meaningless.

Regardless of the availability of relief from the sanctions through the appellate process [2] or the meaning and effect of the judge's order relative to actual damages, the appellant was seeking to recover for money it alleges it was compelled to pay on behalf of its insureds, appellees' clients, as a result of appellees' negligence. Thus, the real question is whether the value of the underlying lawsuit changed as a result of the alleged negligence and the issuance by the court of the sanction order and partial judgment. Appellees contend as a matter of law it did not.

In its reply to the motion for summary judgment, appellant submitted affidavits from E.A. Anderson and Wilton Chalker, claims manager and attorney, respectively, for appellant. These affidavits state facts which show that, prior to the sanction order, appellant determined that the case should settle for the amount of the primary carrier's limit of liability, $500,000.00, and an additional amount of $497,673.00 to be

paid by the excess carrier. Some of the factors Chalker mentioned in determining this amount, as listed in his affidavit, were that plaintiffs were not entitled to actual damages, that exposure was limited to punitive damages arising from gross negligence, that while evidence of gross negligence was weak, the fact that minors were seeking damages for the death of their father created the possibility of a sympathetic jury for plaintiffs, that appellees expressed confidence in trying the case because the corporate defendants would make good appearances and there was no "passion" in the case, and that the settlement offer was based on the evaluation of lawyer Drabek.

■ Both Chalker and Anderson confirmed that the settlement offer of $1,800,-000.00, made after the sanction order was entered, was made upon the recommendation of Drabek, and constituted appellant's and appellees' opinion of the value of the case after the sanction order. Accordingly, it seems clear that a fact issue exists of whether the value of the case was affected by the sanction order. This being true, it was error to grant the summary judgment on the theory that there was no proximate cause as a matter of law. Moreover, appellees failed to offer any summary judgment evidence of the settlement value of the case, either before or after the sanction order.

By point of error number five, appellant complains that it was error for the trial court to sever this cause from the claim against the primary carrier. It seems obvious that the purpose of the severance was to permit this appeal. If the case against the primary carrier is still pending it is presumed the two cases will be consolidated; otherwise, we consider the point moot.

Because of the errors discussed above, we sustain point of error number one and reverse the judgment of the trial court and remand the case.

2. At best, there are substantial vagaries in predicting the certainty of the ability to reverse a

trial court's judgment.

Dissenting Opinion by NYE, C.J., joined by GERALD T. BISSETT, J.[3]

NYE, Chief Justice, dissenting.

I respectfully dissent. The principal issue in this case is whether, under Texas law, an excess carrier can maintain a legal malpractice suit against the attorneys which the primary carrier retained to defend the common insureds. Since I believe that persons outside the attorney-client relationship do not have a cause of action for injuries they might sustain due to the attorney's failure to perform or his negligent performance of a duty owed to his client, I would affirm the trial court's judgment.

Stonewall Surplus Lines Insurance Company, the excess carrier, sued United States Fidelity & Guaranty Company, the primary carrier, and Jaime A. Drabek and the law firm of Hirsch, Glover, Robinson, & Sheiness (the attorneys which USF & G hired to defend the common insureds), alleging that: (1) USF & G, in compliance with its primary insurance terms and provisions, appointed Hirsch, Glover to defend the insureds; (2) USF & G, as the primary carrier, owed Stonewall a fiduciary duty to conduct a defense, to handle the claim in good faith, and to use due care in conducting the defense; (3) Hirsch, Glover's negligence caused the trial court to strike the insureds' pleadings; (4) Hirsch, Glover's negligence was imputed to USF & G, because Hirsch, Glover was acting as the subagents of USF & G; and (5) USF & G violated its duty to Stonewall, proximately causing damages to Stonewall.

Hirsch, Glover moved for summary judgment on the bases that: (1) under Texas law, an attorney does not owe a duty to a non-client; and (2) nothing that Hirsch, Glover did or did not do proximately caused Stonewall any damages. The trial court granted summary judgment favorable to Hirsch, Glover and severed Stonewall's suit against Hirsch, Glover from its suit against USF & G.

Texas follows the majority view that persons outside the attorney-client relationship do not have a cause of action for injuries they might sustain due to the attorney's failure to perform or his negligent performance of a duty owed to his client. *Dickey v. Jansen,* 731 S.W.2d 581, 582 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). In the absence of privity of contract, an attorney owes no duty to third-party non-clients. *Draper v. Garcia,* 793 S.W.2d 296, 301 (Tex.App.—Houston [14th Dist.] 1990, no writ); *First Mun. Leasing Corp. v. Blankenship, Potts, Aikman, Hagin & Stewart,* 648 S.W.2d 410, 413 (Tex.App.—Dallas 1983, writ ref'd n.r.e.); *Bell v. Manning,* 613 S.W.2d 335, 339 (Tex. Civ.App.—Tyler 1981, writ ref'd n.r.e.). Texas authorities have consistently held that third parties do not have standing to sue attorneys on causes of action arising out of their representation of others. *Graham v. Turcotte,* 628 S.W.2d 182, 184 (Tex. App.—Corpus Christi 1982, no writ) (mortgagor could not sue mortgagee's attorney claiming excessive fees were exacted on foreclosure); *Martin v. Trevino,* 578 S.W.2d 763, 770 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.) (doctor was not allowed to sue plaintiff's attorneys for alleged bad-faith medical malpractice claims); *Swafford v. Holman,* 446 S.W.2d 75, 79 (Tex.Civ.App.—Dallas 1969, writ ref'd n.r.e.) (third party could not sue attorney for wrongful attempt to enforce a foreclosure); *Morris v. Bailey,* 398 S.W.2d 946, 948 (Tex.Civ.App.—Austin 1966, writ ref'd n.r.e.) (third party may not file a claim against an attorney because he filed a motion for continuance).

In *Bryan & Amidei v. Law,* 435 S.W.2d 587 (Tex.Civ.App.—Fort Worth 1968, no writ), the court stated:

It is a general rule that the duties of the attorney which arise from the relation of attorney and client, are due from the attorney to his client only, and not to third persons. The latter have not retained or employed the attorney, nor has he rendered any services for them, at their request or in their interest. No privity of contract exists between them

---

**3.** Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

and the attorney. For such injuries, therefore, as third persons may sustain by reason of the failure or neglect of the attorney to perform a duty which he owed to his client only, they have no right of action against the attorney.

*Id.* at 593.

Stonewall argues that under the doctrines of direct duty and equitable subrogation, the attorneys hired by the primary insurer to defend the jointly insured liability claim owe a duty to provide a reasonably skillful defense to both the insured and the excess carrier. However, Stonewall does not cite any Texas cases allowing an excess insurer to assert a legal malpractice action against the attorneys hired by the primary insurer to defend the common insureds. And at least one court has refused to allow an excess insurer to bring a malpractice claim (as subrogee of the insured) against counsel hired by the primary carrier. *American Employers' Ins. Co. v. Medical Protective Co.,* 165 Mich.App. 657, 419 N.W.2d 447 (1988), *appeal denied,* 431 Mich. 856 (1988). In that case, a physician had $200,000 of primary insurance and $1 million of excess insurance. The physician was sued for malpractice, and the primary insurer hired a law firm to defend the suit. The malpractice action resulted in a $900,000 verdict against the physician. The excess insurer then sued the law firm and the primary insurer, alleging negligence and legal malpractice on the part of the law firm. The trial court granted summary judgment in the law firm's favor on the basis that the excess insurer had no recognizable cause of action. On appeal, the excess insurer argued that the doctrine of equitable subrogation entitled it to pursue a malpractice action against the law firm. In affirming the trial court's ruling, the court of appeals held:

Although the plaintiff excess insurer may be characterized as an equitable subrogee of the insured physician, it may not sue the insured's defense attorney for legal malpractice. To hold otherwise would in our judgment acknowledge a direct duty owed by the insured's attorney to the excess insurer and would be tantamount to saying that insurance defense attorneys do not owe their duty of loyalty and zealous representation to the insured client alone. Such a holding would contradict the personal nature of the attorney-client relationship, which permits a legal malpractice action to accrue only to the attorney's client. [citations omitted] Such a holding would also encourage excess insurers to sue defense attorneys for malpractice whenever they are disgruntled by having to pay within limits of policies to which they contracted and for which they received premiums. Were this to occur, we believe that defense attorneys would come to fear such attacks, and the attorney-client relationship would be put in jeopardy.

*Id.* 419 N.W.2d at 448–49; *see also Continental Casualty Co. v. Pullman, Comley, Bradley & Reeves,* 929 F.2d 103, 106–07 (2nd Cir.1991) (excess insurer which had been subrogated to the rights of its insured may not maintain legal malpractice action against the insured's attorney on that basis).

Stonewall cites two New York cases that are said to find a duty of care running from the law firm to the excess carrier. *Hartford Accident & Indem. Co. v. Michigan Mut. Ins. Co.,* 93 A.D.2d 337, 462 N.Y.S.2d 175 (1st Dept.1983), *aff'd,* 61 N.Y.2d 569, 475 N.Y.S.2d 267, 463 N.E.2d 608 (1984);[1] *Great Atl. Ins. Co. v. Weinstein,* 125 A.D.2d 214, 509 N.Y.S.2d 325 (1st Dept.1986).[2] These cases are factually dissimilar to the case before this Court on

---

**1.** In *Hartford,* New York's High Court found that the defendant primary insurer owed the excess carrier the same duty to act in good faith that the primary insurer owed to its own insureds. The case is devoid of any discussion about what obligation, if any, is owed by an insured's counsel to an excess carrier.

**2.** In *Weinstein,* an intermediate appellate court found that the complaint stated a cause of action when it alleged that defense counsel owed a duty to exert his best efforts on behalf of the insured and excess carrier, the latter a subrogee of the former. There, the court noted the possibility of serious ethical violations because the attorney had purportedly represented co-defendants with adverse interests.

appeal and do not serve as authority for Stonewall's contention that Hirsch, Glover owed it a duty of care. My concern is not with the progress of New York law, but the state of the law in Texas.

Here, Hirsch, Glover's summary judgment evidence included attorney Jaime Drabek's affidavit. He stated that Hirsch, Glover was hired to represent only the insureds and Apolinar Delgado in the underlying suit. Stonewall was not Hirsch, Glover's client in the suit, and Hirsch, Glover did not have a contract or an agreement (oral or written) with Stonewall to represent it in the suit. Hirsch, Glover did not receive any payment or consideration from Stonewall in connection with Hirsch, Glover's representation of its clients. He also said that Stonewall never told Hirsch, Glover that it believed or assumed that Hirsch, Glover was its attorney in the suit.

Stonewall's response to Hirsch, Glover's summary judgment motion included the affidavits of attorney Wilton Chalker and E.A. Anderson. Mr. Chalker stated that Stonewall hired him to represent it in the underlying suit and that Hirsch, Glover represented the insureds and Apolinar Delgado. He said that Hirsch, Glover advised him on the status of the case regarding liability, damages, evaluation of witnesses, procedural developments, evaluation of gross negligence, punitive damages, and discovery progress. He relied on Hirsch, Glover to conduct the defense. According to Mr. Chalker, Hirsch, Glover recommended settling the suit for $1.8 million.

E.A. Anderson, Stonewall's claims manager, stated that from January, 1988, to April, 1988, Hirsch, Glover advised him on the status of the case regarding liability, damages, evaluation of witnesses, procedural developments, evaluation of gross negligence, punitive damages, and discovery progress. In April, 1988, Stonewall hired Wilton Chalker to represent its interest in the suit. Mr. Chalker's role was to monitor the litigation and advise and assist Mr. Anderson in evaluating the case so that Mr. Anderson could make a determination regarding Stonewall's exposure. He said that Hirsch, Glover recommended that the case be settled for $1.8 million.

Based upon this evidence, Stonewall was not Hirsch, Glover's client in the underlying suit, and no privity of contract existed between those two parties. Stonewall could monitor the litigation through its own attorney, Wilton Chalker, and assure itself that USF & G was living up to its responsibilities as a primary carrier.

A definite public policy interest exists to ensure that an attorney owes his or her uncompromised allegiance to a client. If an attorney, hired by the primary carrier to defend the insured, is placed in the position of owing a duty to a third-party excess carrier, absent privity of contract, then the potential threat of excess carriers bringing suits against an attorney in this posture would undermine the duty of loyalty which the attorney owed to the insured. I would hold that Stonewall does not have a cause of action against Hirsch, Glover for their alleged failure to perform a duty which they owed to the common insureds. *See Draper,* 793 S.W.2d at 301; *Dickey,* 731 S.W.2d at 582; *First Mun. Leasing Corp.,* 648 S.W.2d at 413; *Bell,* 613 S.W.2d at 339. I would affirm the trial court's judgment.

GERALD T. BISSETT,[3] J., joins in the dissent.

---

3. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex.

Gov't Code Ann. § 74.003 (Vernon 1988).